1 DEBRA W. YANG
United States Attorney
2 STEVEN D. CLYMER
Special Assistant United States Attorney
3 Chief, Criminal Division
WESLEY L. HSU (Cal. Bar No. 188015)
4 RUPA GOSWAMI (Cal. Bar No. 200033)
Assistant United States Attorneys
5      1500 United States Courthouse
312 North Spring Street
6      Los Angeles, California 90012
Telephone: (213) 894-3045/5486
7      Facsimile: (213) 894-8601/3713

8 Attorneys for Plaintiff
UNITED STATES OF AMERICA

9

10                    UNITED STATES DISTRICT COURT

11              FOR THE CENTRAL DISTRICT OF CALIFORNIA

12 UNITED STATES OF AMERICA,          ) No. CR 02-1195-FMC
                                      )
13             Plaintiff,             ) ███████ ORDER RE: EXPERT
                                      ) TESTIMONY AND RECORDED
14             v.                     ) STATEMENT
                                      )
15 BARRY FRANCIS NISELY,              )
                                      ) TRIAL:    August 31, 2004
16             Defendant.             ) TIME:     9:00 a.m.
                                      )
17 ─────────────────────────────────

18

19      Having considered all of the submissions of the parties and

20 the oral argument of counsel on July 12, 2004 (transcript

21 attached as exhibit A), July 20, 2004 (transcript attached as

22 exhibit B) and July 22, 2004 (transcript attached as exhibit C),

23 the Court makes the following findings:

24      1.   Defendant's proposed expert, Dr. Sara Kiesler, is

25 qualified to testify regarding the general concepts of Internet

26 communication and the general principles regarding the

27 psychological effect of anonymity.  (See Oral Ruling of Court, RT

28 (7/22/04) 4).

2.   Dr. Kiesler's proposed testimony regarding "child molesters," in her words, or sexual predators, however, lacks foundation and appears to the Court to lack foundation and to be based on fatally flawed mathematics.  (RT (7/22/04) 5).

3.   Moreover, Dr. Kiesler's proposed testimony regarding sexual predators is irrelevant, as defendant is not charged with sexual assault of a minor or intending to sexually assault a minor.  (RT (7/22/04) 5).

4.   Dr. Kiesler's proposed testimony regarding this defendant's actions and what seems likely or unlikely with respect to this defendant lacks foundation.  (RT (7/22/04) 4-5).

5.   Dr. Kiesler's proposed testimony regarding this defendant's intent in this case is precluded by Federal Rule of Evidence 704(b), and, alternatively, the likely confusion and unduly prejudicial nature of such testimony substantially outweighs the probative value, given that such testimony has no probative value.  (See RT (7/22/04) 5).

6.   The Court finds that any probative value of defendant's contact with "venicegrl5" in the government's case-in-chief is irrelevent.  (RT (7/12/04) 16-17, 19-20).

7.   The Court also finds that defendant's statements regarding prior sexual activity with a 16-year-old are inextricably intertwined with the charged offense because defendant makes repeated references to this prior encounter when he was speaking to the undercover agent or speaking on the computer in an obvious effort to convince "Becky13nLA" that he

1  had experience with young girls that he had met on the Internet

2  and to provide her with some assurance that she would be safe and

3  that this would be an activity in which she would want to engage.

4  (RT (7/12/04) 15-16).

5      8.   Additionally, the Court also finds that defendant's

6  statements regarding this prior sexual *encounter* is relevant to defendant's

7  intent and lack of mistake.  (RT (7/12/04) 16).

8      9.   The Court finds that, with one caveat, the probative

9  value of defendant's statements regarding the prior sexual

10  encounter outweighs the prejudice to defendant.  (Id.).  The

11  Court does find that reference to the prior girl's minor age in

12  the government's case-in-chief causes defendant prejudice

13  sufficient to warrant redaction.  (RT (7/12/04) 23).

14      10.  The Court has also reviewed extensively, both without

15  and with the parties, the transcript of defendant's statement to

16  the Federal Bureau of Investigation and redacted portions which

17  the Court finds causes defendant prejudice either by referring to

18  the prior girl's minor age, (RT (7/20/04) 3-10), or by providing

19  "quasi-expert" testimony implicating sexual predator "profile"

20  testimony, (RT (7/22/04) 7-12).

21      11.  The Court considered how the Instant Message "chat"

22  would be published to the jury and found that having two people

23  read the dialogue into evidence was acceptable, (RT 7/20/04 20-

24  21) provided the reading was not dramatized (RT 7/20/04 22).

25  ///

26  ///

27  ///

28

Based on the above findings, the Court hereby ORDERS that:

1.   Dr. Kiesler may testify regarding background issues relating to the Internet in general and the possible psychological effects of anonymity on the Internet only.

2.   Dr. Kiesler may not testify, and defense counsel are ordered not to elicit, any testimony from Dr. Kiesler regarding child sex offenders, this defendant, or the evidence in this case.

3.   The government may admit at trial the redacted versions of defendant's statement to the FBI and defendant's Instant Message "chats" with "Becky13nLA" in conformance with the Court's prior rulings on this issue and as previously submitted by the government to the Court.


IT IS SO ORDERED.

Dated: July 29, 2004

_____
HONORABLE FLORENCE-MARIE COOPER
UNITED STATES DISTRICT JUDGE


Respectfully Submitted,

DEBRA W. YANG
United States Attorney


_____
RUPA GOSWAMI
WESLEY L. HSU
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

1

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

THE HON. FLORENCE-MARIE COOPER, JUDGE PRESIDING

UNITED STATES OF AMERICA,          )
                                   )
                    Plaintiff,     )
                                   )
        vs.                        ) NO. CR 02-1195 FMC
                                   )
BARRY FRANCIS NISELY,              )
                                   )
                                   )
                    Defendant.     )
_____)


REPORTER'S TRANSCRIPT OF PROCEEDINGS

Los Angeles, California


Monday, July 12, 2004


PAT CUNEO, CSR 1600
Official Reporter
Roybal Federal Building
255 East Temple Street
Room 181-E
Los Angeles, CA  90012
(213) 626-0197

EXHIBIT A

2

```
 1   APPEARANCES:

 2   FOR THE PLAINTIFF:    DEBRA W. YANG
                           UNITED STATES ATTORNEY
 3                         BY:  WESLEY HSU
                           and  RUPA GOSWANI
 4                         ASSISTANT UNITED STATES ATTORNEYS
                           United States Courthouse
 5                         312 N. Spring Street
                           Los Angeles, California 90012
 6                         (213) 894-3045 & 894-5486

 7   FOR THE DEFENDANT:    MARIA E. STRATTON
                           FEDERAL PUBLIC DEFENDER
 8                         By:  NADINE HETTLE, DEPUTY
                           and  SYLVIA TORRES-GUILLEN, DEPUTY
 9                         321 East Second Street
                           Los Angeles, California 90012
10                         (213)894-4790 & 894-

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1   LOS ANGELES, CALIFORNIA;  MONDAY, JULY 12, 2004; 2:04 P.M.

 2                           -oOo-

 3           THE COURT:  Good afternoon.

 4                 (All counsel responded.)

 5           THE CLERK:  Calling Criminal Case 02-1195, United

 6   States of America vs. Barry Francis Nisely.

 7           Please state your appearances.

 8           MR. HSU:  Good afternoon, Your Honor.  Wes Hsu and

 9   Rupa Goswani on behalf of the United States.

10           MISS HETTLE:  Good afternoon, Your Honor.

11   Nadine Hettle and Sylvia Torres-Guillen on behalf of

12   Mr. Nisely who is present.

13           THE COURT:  Good afternoon.

14           The matter is on calendar this afternoon on some

15   motions in limine in this case.  Let me give you my

16   tentative response to these motions, and then I'll hear from

17   whomever would like to be heard.

18           The first motion is filed by the Government.  It's

19   a motion to exclude the testimony of Dr. Kiesler.  I

20   certainly share some of the Government's concerns about the

21   testimony of this witness; and, initially, in reading the

22   Government's papers, it seemed to me to be inappropriate to

23   allow her to testify.

24           The defense then responded that she doesn't intend

25   to offer any opinion concerning the defendant's mental
```

1   state.  She didn't write a report.  There is nothing more to

2   provide in discovery.

3          So it seemed to the court that perhaps there is no

4   need for the testimony if she has nothing to say about the

5   defendant's intent or state of mind.

6          It seemed, initially, in looking at what she would

7   testify to, that it's rather common knowledge that a jury

8   doesn't need the assistance of an expert if the expert is

9   going to tell them things that everybody would understand

10  which is that when you sit at a computer and you type in a

11  message, the person on the other end can't see you; that you

12  are anonymous and somewhat hidden and there is an

13  opportunity certainly to fabricate.

14         On the other hand, there may be people on our

15  jury, certainly there are people in our society who have

16  never turned on a computer, who have never been on the

17  Internet, certainly never been in a chatroom.  I am included

18  in the last group of people who has never been in a

19  chatroom.

20         Perhaps treating it as expert testimony that is

21  simply educational for a jury in order to explain the

22  context in which this event occurred makes it somewhat

23  innocuous, and I'm sort of on the fence as to whether it's

24  of any value or assistance to a jury to learn these things.

25         I am concerned, however, about the concept that

5

1    she would testify that the defendant's conduct is consistent

2    with someone who is fantasizing or exaggerating or making up

3    facts.

4         I don't believe that she is qualified to make that

5    kind of -- form that kind of an opinion.  There is nothing

6    to indicate that she has interviewed the defendant or that

7    she would be qualified to do that or to make any

8    determination about the defendant's conduct.

9         Certainly, she can't testify to his state of mind;

10   but I do believe that any testimony about whether the

11   defendant's conduct is consistent or inconsistent with

12   people who are fabricating on the Internet is not

13   admissible.

14        I'm really sort of on the fence as to whether it

15   would be of value to the jury to have her just educate the

16   jury about human-Internet communications; and I don't have a

17   strong tentative ruling one way or the other on that.

18        So maybe you would like to address that before we

19   go on to other issues.  Either side.

20        MISS HETTLE:  Good afternoon, Your Honor.

21        I just would like to emphasize one of the points

22   that I believe I raised in the brief which is that I have

23   the expectation that the Government will be putting on a

24   case agent that will, I think, try to be a soft expert about

25   investigation techniques in chatrooms and giving his

6

1   so-called expertise on how online sex offenders act; and

2   know that the case agent, I feel from looking at the

3   discovery, is going to be testifying to that.

4            Given that, that is why we chose an expert to

5   testify in this case; and I think that the court has

6   identified something important; that we cannot make an

7   assumption that the public knows as much about computers as

8   will be revealed in this case; and I think it is helpful to

9   the jury.  The rules do talk about allowing in testimony

10  that is helpful.

11           I think it's an interesting point that the court

12  raises on sort of the second half of its analysis that

13  Dr. Kiesler would not be qualified to make any kind of

14  opinion as to whether my client was acting consistent with

15  the fantasy.

16           I believe that the Government will be eliciting

17  testimony that -- from their soft expert that he was acting

18  consistent with a sex offender.  So that raises an

19  interesting issue.

20           We should be able to present evidence that his

21  conduct is consistent with someone who is engaging in common

22  Internet practices such as exaggeration, termed such as

23  "flaming" when someone responds back to someone else in this

24  exaggerated form; and I think that it would be helpful to

25  the jury.

7

1        I think it's needed given that the Government is

2   probably going to run this case as they do all sorts of

3   cases of this type and that we should be able to have an

4   expert that goes as far as they go.

5        So I do think that the court -- I would ask the

6   court to reconsider its tentative, especially on the last

7   part.

8        THE COURT:  Well, part of the problem is that

9   without a report and without a specific recitation of

10  exactly -- if she has an opinion about consistent or

11  inconsistent behavior, what is that based on?

12       I don't know if she has read the transcript of the

13  Internet communications in this case.  I don't know --

14  looking at her background, I don't really see very much that

15  would qualify her to be able to compare the conduct of

16  people who go on the Internet and engage in sexual dialogue

17  with people so that she could tell whether the defendant's

18  dialogue in that context is exaggerated or not.

19       I'm just really concerned about that.

20       MISS HETTLE:  Well, Your Honor, if the court would

21  like for us to try and get more information on Dr. Kiesler,

22  we can do that; and I think that that should be the step

23  before the court disqualifies her from testifying in certain

24  areas.

25       I just think that the Government has sort of set

8

1    up a situation and does with these types of cases where they

2    put on their agent who really does testify as an expert in

3    these areas.

4           And, you know, our whole purpose for having

5    Dr. Kiesler is to respond to that sort of testimony; and

6    they will be making some very strong connections with that

7    agent that what Mr. Nisely was doing was consistent with a

8    sex offender; and I think that we should be able to

9    counteract the testimony with Dr. Kiesler.

10          Now, if the court wants to --

11          THE COURT:  I agree with you that you should but

12   you may not have the right person to do it with.

13          MISS HETTLE:  Well, what I was saying, if the

14   court wants us to go there and show that -- she is reviewing

15   the transcripts of the online communications.

16          She has not produced any further information to

17   us, and we could get that out of her to help the court in

18   making its decision.

19          THE COURT:  Okay.  Well, we're talking about a

20   trial that's two weeks away so when do you believe she could

21   provide something in writing that you could give both the

22   defense and the court?

23          MISS HETTLE:  That I'm not sure of.  May I have a

24   moment, Your Honor?

25          THE COURT:  Yes.

1                    *(Counsel conferred.)*

2              MISS HETTLE:  Your Honor, we could attempt to get

3    something by next Monday; and if it's not possible to get

4    our expert to give it to us by then, then maybe we could

5    talk to -- arrange for moving it for a short time so that

6    she can get this report.

7              I understand from your clerk that there is a trial

8    that is right before us which could impact our trial, and I

9    don't want to hold the court up from making its decision

10   about its calendar, but I think that that would be the best

11   strategy at this point.

12             THE COURT:  All right.  Let me hear from the

13   Government then on that proposal.

14             MISS GOSWANI:  Your Honor, the court has actually

15   hit upon what the Government's concerns are here; and, first

16   of all, we don't have a report.  We don't really know what

17   Dr. Kiesler's conclusions are.  We don't know what she

18   looked at.

19             But, more importantly, what we really don't have

20   is we have no way of connecting the dots.  We have -- even

21   if we assume that based on her training she can make some

22   kind of representations about how Internet users generally

23   function, although there are millions of Internet users so

24   even that is quite a stretch.

25             What defense counsel has indicated in their papers

1  is that they want to make this connection between general

2  Internet users and the defendant's use the Internet in this

3  case; and what we are missing is this whole middle section

4  of how do you get from here to there.

5          We have no idea what methodology or process

6  Dr. Kiesler uses, whether it's scientifically acceptable.

7          THE COURT:  I understand all of that; and we'll

8  either be able to fill in that gap with more information

9  from her or not.

10         But if you can have a written report from the

11  doctor by next Monday, do you think it's possible to hold on

12  to the July 27 trial date?  Or would you rather move it out

13  a little bit now to give you more time to respond?

14                  (Counsel conferred.)

15         MISS GOSWANI:  Your Honor, actually, we would

16  prefer to hold on to the trial date.  Counsel has another

17  trial set pretty much right after this trial in August.  So

18  our goal is to hold this trial date the best we can.

19         But we just want to point out that, you know,

20  there would have to be quite -- this report would have to be

21  quite fabulous come next Monday to overcome the barriers

22  that are in place already.

23         And, also, just to respond to defense counsel's

24  assumption, the Government has not presented anything in its

25  discovery so far suggesting that it is going to put on any

1    kind of profiler evidence; and to the extent that it does

2    certainly at that point we could revisit this issue.  But at

3    this point, there is no reason for preempting that in

4    allowing this testimony.

5                THE COURT:  Okay.

6                MISS HETTLE:  Your Honor, I don't think there is a

7    gap as much as the Government claims.  I mean, we did give a

8    very extensive Curriculum Vitae.  This woman is a professor

9    of 40 years with Carnegie Mellon, and I'm sure she has a

10   method that is academically accepted.

11               Your Honor, they did give us -- I believe it's

12   Brian Hunt -- Doug Hunt, a resume of this individual who --

13   it gave quite extensive information about this person

14   working with sexual crimes and that -- I think that if they

15   are going to call this person, then we are entitled to the

16   same thing that they are asking of us which is what is this

17   person's testimony going to be?

18               And there was no -- there was no information given

19   to us about that and we did request it.

20               MISS GOSWANI:  Your Honor, to clarify that,

21   Doug Hunt is only anticipated as a rebuttal witness for the

22   Government.  We actually provided that resume out of an

23   abundance of caution once we got the defense's expert.

24               MR. HSU:  I'm sorry, Your Honor.  Just to clarify

25   one thing.  He is going to testify as a percipient witness;

12

1   but the only reason that the resume was disclosed would be

2   to testify as an expert in rebuttal.

3          THE COURT:  Okay.

4          MISS HETTLE:  I believe it's Agent Elon who is --

5   there was some indication in the discovery that this person

6   is going to talk about going into the chatroom and their --

7   their whole methodology of how they -- I don't want to use a

8   loaded term but trap or catch who they feel is an online sex

9   offender.

10         I have every reason to believe, based on how this

11  office has tried previous cases, that they will elicit

12  testimony that gets into the area that Dr. Kiesler was

13  talking about; and I think that dovetails with the next

14  motion.

15         But, you know, if one of the issues that comes up,

16  for example, in the other motion that is on today is when

17  somebody has an address "venicegrl15," what does that mean?

18  What are numbers in Internet or identities mean?  What does

19  it mean in the context of a chatroom?

20         I have every reason to believe that their agent is

21  going to testify to that, and we need an expert to respond.

22         THE COURT:  I understand.

23         Logistically, if we do have a more detailed report

24  or a report from Dr. Kiesler next Monday, do you want to put

25  this on calendar for maybe Monday afternoon or Tuesday

1    afternoon just to -- so that we can both have a look at and

2    decide what we are going to do?

3            MISS HETTLE:  Your Honor, we would be agreeable to

4    that.  I do have a couple of matters on for 1:30 next

5    Monday, and I don't want to hold the court up waiting for me

6    so Tuesday would work for me.  I don't know if it works for

7    anybody else.

8            THE COURT:  I think Tuesday afternoon is probably

9    fine.

10                  (Court and the clerk conferred.)

11           THE COURT:  2 o'clock.

12           MISS HETTLE:  That works with the defense, Your

13   Honor.  I would make a request, Your Honor, that we get a

14   similar report from their agent outlining any such testimony

15   in this area.

16           MR. HSU:  Your Honor, I think he would only be

17   testifying in rebuttal so we don't know what he is going to

18   say because it will depend on what Dr. Kiesler says in her

19   direct.

20           THE COURT:  So that's who you're talking about,

21   the witness who is going to testify possibly as an expert in

22   rebuttal?

23           MISS HETTLE:  Well, there is Mr. Hunt and there's

24   also the case agent who is going to talk about how he

25   structured the investigation; and I think that gets into

14

1    some of the area that Dr. Kiesler was going to talk about

2    how they profile people in certain chatrooms because that's

3    getting into the same area of testimony because they are

4    using numbers in Internet identities and all of that.

5              MR. HSU:   I think maybe, Your Honor, we can short

6    circuit some of this.  I can just meet with Miss Hettle

7    prior to next Tuesday and talk about exactly what that agent

8    is going to testify to.

9              THE COURT:   All right.

10             MISS HETTLE:   Your Honor, I still am going to

11   request that the Government put that in writing even though

12   we meet because I think -- and I don't mean this in a

13   disrespectful way.

14             I think this is just a way of them not saying that

15   their agent's testimony is on par with what our expert will

16   testify with; and I just -- I do believe they are and I

17   think for the sake of keeping the record here that we need

18   this in writing.

19             THE COURT:   It's hard for me to tell from what I

20   am hearing whether this witness is a percipient witness who

21   is going to talk about the way that he investigated this

22   case and how he came to the conclusions reached or whether

23   he's going to testify as an expert and talking about how the

24   FBI generally goes about doing these kinds of

25   investigations.

15

1          If that's the case, the defendant is entitled to a

2     report.  If he's a percipient witness, then I think it's not

3     required.  But I would urge you to meet and confer on this

4     and exchange whatever information you have about the

5     testimony so that will get resolved.

6              MR. HSU:  Yes, Your Honor.

7              THE COURT:  Okay.  All right.

8              Did we decide on a time for next Tuesday on this

9     one motion?

10             THE CLERK:  It's available.

11             THE COURT:  2 o'clock.

12             MISS HETTLE:  2 o'clock is okay with the defense.

13             THE COURT:  All right.

14             There is the Government's motion concerning

15    admissibility of evidence.  The first has to do with

16    defendant's statements about prior sexual activity with a

17    16-year-old.

18             My tentative is to grant the motion to admit that

19    evidence.  I agree that it is inextricably intertwined with

20    the charged offense -- and I rarely find anything that is --

21    I think that's generally an overused statement.

22             But here the defendant makes repeated references

23    to this prior encounter when he was speaking to the

24    undercover agent or speaking on the computer.

25             It was obviously part of his effort to convince

1    her that he had experience with young girls that he had met

2    on the Internet; and I think it's to provide her with some

3    assurance that she would be safe and that this would be an

4    activity she would want to engage in.

5              Additionally, it is relevant on the defendant's

6    intent and lack of mistake.  Even if there is no defense of

7    mistake, certainly intent is part of the Government's

8    burden.

9              The defendant doesn't have to raise that issue in

10   order to make the evidence admissible; and, finally, the

11   prejudice to the defendant is outweighed by the probative

12   value of that evidence.

13             I'll talk about the one remaining issue and then

14   if anybody wants to be heard.  There is a request to admit

15   prior -- evidence of a prior attempt to have an Internet

16   chat with a young girl; and my tentative is to deny that.

17             I'm a little bit working in the dark.  I don't

18   know quite what the evidence is on this issue; and in

19   reading the papers, I couldn't find any reference to any

20   specific place.

21             I think the defendant referred to this in his

22   statement to the FBI agent, but I wasn't given a pinpoint

23   cite, and I certainly didn't read the entire interview.

24             Assuming that's the case, it doesn't appear to the

25   court that it's relevant; and other than character, I don't

1    know why it would bear on any relevant issue.

2             The fact that a person charged with a crime has

3    previously attempted to commit a similar crime, it seems to

4    me it's character evidence and I'm not inclined to admit it.

5    But if there is something about it that I don't know, I'll

6    be happy to hear about it, whoever has it.

7             MISS HETTLE:  Your Honor, I'd just like to be

8    heard on the first issue.

9             In reference to the online references to the

10   defendant having some sort of sexual encounter with a

11   16-year-old, Your Honor, I don't believe -- I disagree

12   respectfully that that's inextricably intertwined.

13            I think that the Government can still put on its

14   case without it, but I wanted to address the court's

15   comments.  I mean, I think I made that argument in my

16   papers; and I think there is high prejudice value to this

17   evidence which I've also argued in my papers; and I think

18   that there is -- there is -- it's not a position I'm

19   adopting, but I'm suggesting it to the court, an in between

20   of excising references to the age of the person.

21            I think that the only thing that I could see about

22   being inextricably intertwined is perhaps the references to

23   sex and then getting back to the conversation with the

24   becky13nLA, you know, closely thereafter, making some remark

25   that perhaps suggested that the same conduct would occur at

18

1   the meetings.

2         And if that is the case, I think if the court is

3   referring to needing these comments to put into context any

4   suggestion that they would have sex upon their meeting, that

5   can be done without reference to the person's age.

6         Saying 16 is just highly -- really explosive

7   evidence to put in front of a jury that could turn them off

8   for the rest of the case and prejudice them against my

9   client.

10         And I don't think that the reference to age is

11   necessary, nor do I think the context of the statement is

12   such that it's really putting this person's mind at ease

13   that this person treats young women right and, you know,

14   that this is an experience I've had before with a

15   16-year-old so there you should feel comfortable.

16         I think that it's important -- if it's important

17   at all, it's important because it makes reference to sexual

18   acts; and if you excise or sanitize the remarks to not

19   reference the woman's age, I think that that might be

20   something that the court can consider in between.

21         THE COURT:  Thank you.

22         MR. HSU:  Your Honor, before I argue legally, I

23   wanted to clarify a factual matter to the court.  I

24   understand the court's frustration with not having the prior

25   contact.  We didn't actually have a copy of it until after

```
 1    the motion was filed.

 2              We did disclose to defense counsel at Bates No.

 3    191.  It's literally two lines that took place on the same

 4    day as the first chat between the defendant and the

 5    undercover agent involved in this case.

 6              The first line is the defendant attempting to say

 7    hi to the other undercover agent, and the second line is him

 8    attempting to say hello to the other undercover agent.  The

 9    other undercover agent did not respond to this instant

10    message.

11              The Government's point is that it took place on

12    the same day just a little bit earlier than the defendant's

13    actual contact with becky13nLA.

14              THE COURT:  What does this logically tend to

15    prove?

16              MR. HSU:  It proves, Your Honor, that he didn't

17    meet her by happenstance or mistake.  He was in that

18    chatroom, that particular chatroom.  I believe it's "I Love

19    Older Men" is the name of the chatroom; and that he was

20    picking girls' names from that chatroom in order to take --

21    make contact.

22              It's the Government's position that that does show

23    his intent and what he was trying to do in that chatroom.

24              THE COURT:  Did each of those girl's names -- I

25    think one of them had an age in it or a number in it that
```

1    could be interpreted to be an age?

2         MR. HSU:  Well, I actually -- it's sort of

3    difficult to see in this case.  In becky13nLA, obviously,

4    it's clear.  The chat log name that the other agent used is

5    a little bit more ambiguous.

6         It appears to be venicegrl5 but the use of -- but

7    "girl" is actually spelled g-r-l; and the l, depending on

8    how you read it, can be read as a one, so it could appear to

9    the user as Venice girl 15.  But I won't take a position

10   that it compels that conclusion.

11        THE COURT:  I continue to think that that is

12   irrelevant and not admissible.

13        MR. HSU:  With respect to the second point, I urge

14   the court to stay with its tentative ruling.  Age is

15   critical in this case and I don't believe that age can

16   actually be excised conveniently in this case.

17        One of the things that's clear from the instant

18   messages that we've already submitted to the court as

19   Exhibits A and B to this motion is that the defendant was

20   attempting to make becky13nLA comfortable with meeting him

21   on several occasions.

22        And one of those -- one of those ways is that in

23   the first few lines of chat, he talks about the fact that

24   he's already met someone else and that she was 16 and so --

25   and they did lots of things together and that's why it would

1   be okay for Becky to meet him and do those exact same things

2   together.

3          The Government would submit that that is extremely

4   relevant evidence and any prejudice to the defendant is not

5   unfair prejudice within the meaning of 403.

6          THE COURT:  All right.

7          Anything further on any of these motions?

8          MISS HETTLE:  Just briefly, Your Honor.

9          THE COURT:  Sure.

10         MISS HETTLE:  I just would like to remind the

11  court of one of the points in my papers.  When we get later

12  into the investigation and what the agent -- you know, the

13  agent searched the computer and found -- really did not find

14  any evidence of this, in fact, happening which bear some

15  relevance here.

16         Because if -- the fact that it didn't happen and

17  that it's false information is something to be considered as

18  well.  It doesn't totally negate what the, you know, the

19  court's theory of relevance but it does have some bearing on

20  it.

21         And I would just point out the fact that they

22  found no evidence, that there, in fact, was any relationship

23  with a 16-year-old and, in fact, there was evidence given

24  that the person was the age of 18 or over.

25         THE COURT:  Well, I think that actually tends to

22

1   diminish the prejudice to the defendant because if, in fact,

2   this did not occur and it was simply puffery or some

3   statements made to the FBI agent in an effort to make

4   himself appear to be experienced in these events, then

5   certainly that will come out as part of the defense case.

6          Or are you saying that there was -- the Internet

7   communications were found but the girl later said she was

8   18?  Is that what you are referring to?

9          MISS HETTLE:  No.  No communications were found,

10  Your Honor.  It was at the time the defendant made this

11  statement to agents, his statement was that it hadn't

12  occurred the previous night.

13         In fact, it had occurred a year, or maybe more

14  than a year prior; and the investigation found no such

15  Internet communication that occurred anywhere near the night

16  before.

17         Your Honor, the first thing that the jury is going

18  to hear is the case agent testifying to this information and

19  introducing this information that has a statement that:

20  I, you know, basically had a sexual encounter with a

21  16-year-old; and I think that's up front going to cause

22  prejudice in the jury's mind that we're not going to be able

23  to overcome in this casa and I think it's an unfair

24  prejudice, Your Honor.

25         THE COURT:  Let me just take a moment to look over

23

1    these statements.

2                    (*Pause in the proceedings.*)

3            THE COURT:  Well, I am inclined to think the

4    defense is correct.  In looking at the communication between

5    the defendant and the FBI agent, the relevancy that the

6    court sees to this and the interrelationship between the

7    charged offense and what occurred before really is an effort

8    to assure her that he's met someone before over the Internet

9    and they had an encounter that was consensual and friendly

10   and, in fact, there was money involved and the same thing

11   could happen to this becky13 if she wanted to meet with him.

12           I don't see that the age is so important that it

13   overcomes the prejudice; and there certainly is -- there is

14   no question that there is prejudice.

15           My initial feeling was that the probative value

16   outweighed it, but the probative value is met and served

17   without putting in the fact that she's 16; and it looks to

18   me as if there is one deletion to make where she says,

19   "Really?  Was she my age?"  And he said "16."  Actually,

20   that can be changed to read "no."

21           And I think that's the only change that has to be

22   made and everything else about describing an earlier

23   encounter with someone over the Internet, I think, certainly

24   meets the Government's need to show this was not an

25   accidental encounter but something the defendant had the

24

1    intent to do.

2              MR. HSU:  Well, Your Honor, two things.

3              One, I don't think it should say "no."  I think

4    that if the court were to go this way, that we should redact

5    the two lines.  I don't think we should add something.

6              THE COURT:  That's fine.

7              MR. HSU:  But I want to emphasize to the court how

8    many statements we're actually talking about here.  That's

9    just the first one.

10             In Exhibit B, on the last page, he again right

11   before -- right before -- well, it's two days before the

12   meeting when, again, he's making sure that she's going to

13   come and that they are going to do the same thing that they

14   did the previous time.

15             He again says, "Remember I told you about the last

16   girl I met?  She was 16."

17                  (Pause in the proceedings.)

18             THE COURT:  Okay.  Is there any other reference to

19   age?

20             MR. HSU:  There are in the defendant's -- in the

21   defendant's statement to the FBI, there are numerous

22   references.

23             THE COURT:  Well, but that doesn't bear on the

24   relevancy that I find which is that it's part of the offense

25   because he is using it in an effort to lure this young woman

1    to meet him.

2          What he says to the FBI is easily deleted if I

3    find it to be prejudicial so that doesn't concern me.   I

4    think we can excise the references to the age and the

5    statement remains valuable to the Government and prejudicial

6    to the defendant but not excessively prejudicial.

7          So that's my ruling, and I will deny the request

8    to admit evidence about trying to say hello to the other

9    undercover agent.

10          MR. HSU:   I'm sorry, Your Honor.

11          Just briefly to clarify.   Are you ruling that all

12    references to age must be excluded?   Because there are a

13    number of times the defendant says she was 18 or 19 in the

14    interview with the FBI.

15          THE COURT:   Does the defense have any objection to

16    that staying in?   I don't know how that's prejudicial.

17          MISS HETTLE:   Your Honor, what I would like to do

18    is give some thought about that because I think that this

19    issue affects the complexion of the statement that they are

20    going to introduce which might cause another problem which

21    has just come do my mind.

22          We probably are going to have an issue about the

23    rule of completeness with respect to the defendant's

24    statements and make sure that things are not taken out of

25    context.

26

1          So I would like this week, based on the court's

2   ruling today, to talk to the Government about that issue and

3   how the statement might look.

4          THE COURT:  We can always talk about it next

5   Tuesday if there are issues remaining about that.

6          Okay.

7               (*Pause in the proceedings.*)

8          THE COURT:  Thank you then.  I'll see you next

9   week.

10          MISS HETTLE:  Thank you, Your Honor.

11          MISS TORRES-GUILLEN:  Thank you, Your Honor.

12          Sorry, Your, Honor.  Just one additional point.

13          THE COURT:  Yes.

14          MISS TORRES-GUILLEN:  Mr. Nisely has been on bond

15   since the 27th of December.

16          THE COURT:  Has been --

17          MISS TORRES-GUILLEN:  Out on bond.

18          THE COURT:  Uh-huh.

19          MISS TORRES-GUILLEN:  Since December 27, 2002, and

20   he has been on electronic monitoring; and I know that in

21   speaking with him, just psychologically and emotionally,

22   it's been difficult for him because he is restricted to his

23   home.

24          And given that the trial is coming up, we would

25   like for him to be in his best psychological state as

27

1  possible and to be able to be off the electronic monitoring.

2  He certainly has demonstrated that being on supervision --

3  even if it is intensive supervision, he complied with all of

4  his requirements.

5          Our only request would be that he be off

6  electronic monitoring so that he can walk actually around

7  and --

8          THE COURT:  Well, why don't you communicate with

9  the probation officer and find out if there is any

10 objection.

11         If he has been complying with all the conditions

12 all this time, it sounds to me like that's not going to be a

13 problem.  But I would like to have something, just a brief

14 paragraph from probation.

15         Whenever you can get it to me.  We don't have to

16 wait until next Tuesday if probation can get it to me sooner

17 than that.

18         MISS TORRES-GUILLEN:  I'll make the request.

19 Thank you, Your Honor.

20         THE COURT:  All right.

21         (At 2:38 p.m., proceedings were adjourned.)

22

23                      -oOo-

24

25

28

1                          CERTIFICATE

2

3          I hereby certify that pursuant to Section 753,

4    Title 28, United States Code, the foregoing is a true and

5    correct transcript of the stenographically reported

6    proceedings held in the above-entitled matter.

7

8    Date:   July 22, 2004

9

10

11                _____
                   PAT CUNEO, U.S. COURT REPORTER
12                 CSR NO. 1600

13

14

15

16

17

18

19

20

21

22

23

24

25

                  *PAT CUNEO, U.S. COURT REPORTER*

1

1    UNITED STATES DISTRICT COURT

2    CENTRAL DISTRICT OF CALIFORNIA

3    WESTERN DIVISION

4    THE HON. FLORENCE-MARIE COOPER, JUDGE PRESIDING

5

6  UNITED STATES OF AMERICA,            )
                                        )
7                     Plaintiff,        )
                                        )
8           vs.                         )  NO. CR 02-1195 FMC
                                        )
9  BARRY FRANCIS NISELY,                )
                                        )
10                                      )
                      Defendant.        )
11  _____ )

12

13

14            REPORTER'S TRANSCRIPT OF PROCEEDINGS

15               Los Angeles, California

16

17               Tuesday, July 20, 2004

18

19

20

21

22                        PAT CUNEO, CSR 1600
                          Official Reporter
23                        Roybal Federal Building
                          255 East Temple Street
24                        Room 181-E
                          Los Angeles, CA  90012
25                        (213) 626-0197

EXHIBIT B

2

```
 1   APPEARANCES:

 2   FOR THE PLAINTIFF:    DEBRA W. YANG
                          UNITED STATES ATTORNEY
 3                        BY:  WESLEY HSU
                          and  RUPA GOSWANI
 4                        ASSISTANT UNITED STATES ATTORNEYS
                          United States Courthouse
 5                        312 N. Spring Street
                          Los Angeles, California 90012
 6                        (213) 894-3045 & 894-5486

 7   FOR THE DEFENDANT:    MARIA E. STRATTON
                          FEDERAL PUBLIC DEFENDER
 8                        By:  NADINE HETTLE, DEPUTY
                          and  SYLVIA TORRES-GUILLEN, DEPUTY
 9                        321 East Second Street
                          Los Angeles, California 90012
10                        (213)894-4790 & 894-

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

3

```
 1    LOS ANGELES, CALIFORNIA;   TUESDAY, JULY 20, 2004; 2:15 P.M.

 2                              -oOo-

 3              THE COURT:  Good afternoon.

 4                   (All counsel responded.)

 5              THE CLERK:  Calling Criminal Case 02-1195 FMC,

 6    United States of America vs. Barry Francis Nisely.

 7              Please state your appearances.

 8              MR. HSU:  Good afternoon, Your Honor.

 9    Rupa Goswani and Wes Hsu on behalf of the United States.

10              MS. HETTLE:  Good afternoon, Your Honor.

11    Nadine Hettle and Sylvia Torres-Guillen on behalf of Barry

12    Nisely who is present.

13              THE COURT:  Good afternoon.

14              All right.  The matter is on calendar on pretrial

15    issues.  I looked at the Government's proposed redactions

16    and the defense proposed redactions to conversations and the

17    interview.

18              I have distributed to counsel a list of the

19    court's intended rulings.  Does anybody want to be heard on

20    that issue?

21              MS. GOSWANI:  Yes, Your Honor.  The Government

22    would like to be heard.

23              Your Honor, when we were here a week ago, the

24    court made sort of a narrow ruling -- at least that's how

25    the Government understood it -- to be redacting references
```

1    only to the minor age of the other girl but not as to

2    actually meeting with the other girl whom defendant met also

3    on the Internet in the same pattern as the conduct with the

4    charged offense.

5           So when the Government went through these

6    redactions, you know, the Government looked at 44 lines that

7    it could take out of the instant messaging and the

8    confession as to age; and looking at it, you know, we

9    unfortunately only got the other set of redactions on

10   Friday.  There is another set that we can actually agree to.

11          But there are a total of eight pages and five, in

12   particular, the Government really sees as a problem.  The

13   court, according to the court's findings, has allowed four

14   of those five pages.

15          And the problem that the Government has with those

16   specific pages -- and I'll go through them in just a

17   moment -- but I just want to kind of encapsulate where the

18   Government's argument is going here -- is in this case the

19   defendant is saying that there is -- he is putting on some

20   kind of fantasy defense or, with this new expert testimony,

21   that he may have played on the Internet and come up with a

22   fantasy on the Internet but he had no intention of actually

23   going and meeting this girl or no intention of actually

24   hooking up with her.

25          So references in the confession to actually

5

1   meeting with her, which we understood from the court's

2   ruling last week were certainly classic 404(b) and would be

3   admissible.

4           THE COURT:  Right.

5           MS. GOSWANI:  Those references are made on pages

6   37, 38, 39, 55, and 57.  If I could start, Your Honor,

7   with -- actually in reverse order with page 55.  The court

8   had -- as to page 60, the Government has no objection taking

9   out the word "cool."  I think it's consistent.  That was

10  fine.

11          But turning to page 55, Doug Hunt asked in this

12  question:  You know, here's a pattern.  This is a pattern of

13  defendant's behavior.  404(b) certainly goes to that type of

14  plan and *modus operandi* evidence and so we would argue that

15  this should not be struck for that reason and also because

16  it makes it difficult to understand what defendant Nisely's

17  response is because he's affirming that.

18          THE COURT:  Well, the problem is having the agent

19  say it's a pattern doesn't make it relevant pattern

20  evidence.  The difficulty is if you call it a pattern, then

21  you are implicitly saying two underage girls and that's

22  precisely what the court had ruled to omit.

23          MS. GOSWANI:  Well, Your Honor, I guess what we

24  would say is that the pattern is meeting somebody on the

25  Internet and then meeting them in person.  That is certainly

6

1    evidence that is highly probative when defense --

2            THE COURT:  Well, that is coming in.  The fact

3    there is another girl that he met over the Internet,

4    connected with over the Internet and later met, is certainly

5    coming in.  What is staying out is her age and the portions

6    that I have intended to strike either state or imply that

7    she was under the age of 18.

8            MS. GOSWANI:  Well, let me try then on page 39.

9            I mean, I guess, you know, I don't agree that that

10   pattern necessarily means two minor girls.

11           At page 39, we have cut the reference to the age

12   and it would read:  She was asking me more about the girl

13   the second time we met.  She told me she was 18.

14           That has no reference, reading that line, to her

15   age.  He's admitting to meeting with this other girl who he

16   met on the Internet twice.

17           THE COURT:  Well, okay.  I mean, it seems to me

18   there are repeated references that are left in.

19           MS. GOSWANI:  Well, you know, Your Honor --

20           THE COURT:  Over and over, there is discussion

21   about this other girl and who she was and how he met her and

22   what he said so. . . .

23           MS. GOSWANI:  Except that, Your Honor, there are

24   five references in pages -- those are those five pages:  37,

25   38, 39, 55, and 57.  The court is cutting out four of those

7

1    five, you know.  These are admissions that are made

2    post-*Miranda*, completely admissible statements.

3         THE COURT:  Are you saying that there are only

4    five references to the other girl and that four of them are

5    now gone?

6         MS. GOSWANI:  Those are five significant

7    references to the other girl and four of them --

8         THE COURT:  "Significant" is not what I asked you.

9         MS. GOSWANI:  Your Honor, I'd have to go through.

10   I mean, there are sixteen --

11        THE COURT:  I mean, I read this whole thing this

12   morning; and it seemed to me that there were questions -- I

13   shouldn't say I read the whole thing.  I read a lot of it.

14        It seems to me that there was repeated reference

15   to this other girl; that they go back time and again to talk

16   about that so. . . .

17        MS. GOSWANI:  But, Your Honor, the court only

18   asked the Government to exclude references as to age; and we

19   did that.  But the others references to having -- he

20   confirms over and over again that he met with her is

21   certainly highly probative given the fact --

22        THE COURT:  You know what?  We're not here for to

23   you argue with me.  Okay?  So what I have intended to omit

24   are references to her age or implications about her age.

25        I didn't take out all references to this girl.  I

8

1    took out references that lead and give you the impression

2    that she was under the age of 18.  That was my intent.

3              Now when we were here in court last week, I didn't

4    have all of this.  All I had was the fact that the issue of

5    whether or not the jury is entitled to know that the other

6    girl he met was 16; and I ruled that they are not.

7              So what I have intended to omit is everything that

8    either talks about or implies that she was under the age of

9    18.

10             All right.  Other issues?

11             MS. GOSWANI:  Well, Your Honor, there is another

12   time in which he admits to meeting the other girl online;

13   and I wondered if we could at least keep in the nature of

14   the way in which he meets with her; and that is on page 38.

15             He says, "It's kind of" -- you know, this is the

16   conversation.  The other issue in this one is in addition to

17   saying that he has met with this girl, it's the nature of

18   how he has met with her and also how he explains the

19   meeting.

20             It's the line where it says, "It's kind of weird.

21   Usually when you are online, you say I'm 18.  Right?"

22             So he admits the conversation, the dialogs.  He

23   makes it clear to the jury that he actually met her online.

24             THE COURT:  I think that's already clear.

25             If you go through this and you are convinced that

1   the jury is not going to know he met another girl online

2   before he met the victim, or the alleged victim in this

3   case, I will reconsider some of this.

4         But I believe it is in there over and over again.

5   So the rulings will stand.

6         Does the defense want to be heard on that issue?

7         MS. HETTLE:  Your Honor, I don't think it's

8   necessary to reply to the Government's comments in light of

9   the court's ruling.

10        I did just want to argue on the reference on page

11   12 and the reference on page 36.

12        The reference on page 12 was about her driving a

13   car that looked more like her parents.  As I realize, in and

14   of itself, it doesn't necessarily suggest that she is

15   underage; but it does give that impression.  But I can see

16   the court is disagreeing with me.

17        THE COURT:  I mean, college students drive their

18   parents' car.  I didn't see that at all.

19        MS. HETTLE:  Very well.

20        And then moving on to page 36 where he refers to

21   looking his own age, I am concerned when everything is taken

22   out that there are deletions in the transcript, or in the

23   tape, that may be obvious; and he's having a conversation or

24   that part of the conversation is admitted with the blank --

25   other parts of the conversation being blanked out.

1          It does sound like there's -- it suggests that

2    there is a reciprocal discussion.  If he's talking about "I

3    don't look my age," it suggests that they are talking about

4    whether someone else looks about her age or about someone

5    else's age.

6          So I think that is more a contextual problem, and

7    I think it -- I'm just speculating that it might sound weird

8    in light of the tape being cut up.  But I do think it does

9    have a suggestion of a reciprocal discussion about her age.

10         THE COURT:  I don't think the jury is likely to go

11   there or focus on that at all.

12         MS. HETTLE:  May I just talk with cocounsel for a

13   minute?

14         THE COURT:  Yes.

15               (Counsel conferred.)

16         MS. HETTLE:  Your Honor, on that, I would submit

17   it.

18         THE COURT:  Okay.

19         MS. GOSWANI:  Your Honor, could I ask for a

20   clarification on one matter?

21         THE COURT:  Yes.

22         MS. GOSWANI:  As to the chat, that's the Instant

23   Message chat, it's my understanding from the court's order

24   that we will delete the word "cool" but we will leave the

25   names in place so it will still say "bnisely" and

1    "Becky13nLA."

2            The reason I ask that question is because the way

3    instant messaging chat works is when the line ends, it

4    actually means that you're logging off the computer line.

5    So I was hoping to at least keep the accuracy of that

6    because I am going to have the agent explain what that means

7    to the jury.

8            THE COURT:  I don't understand what you've just

9    said.  I understand that you are saying that you would like

10   to leave their names in in blanks which would make it clear

11   that something has been deleted; but I don't know why you

12   want to do it.

13           MS. GOSWANI:  I guess, you know, I have this issue

14   both as to the instant messages; and actually now that we

15   are going to redact the audio files, there will be these

16   sort of big blanks.

17           THE COURT:  Right.

18           MS. GOSWANI:  And I guess my only concern is I

19   don't want the jury to feel that there is, you know,

20   something wrong with the Government's recording equipment,

21   you know.

22           I would like to at least let them know that

23   there's -- you know, the equipment is working fine, you

24   know.  The chat logs are being recorded accurately.  The,

25   you know, tape-recording was functioning when the confession

1   was taken.  That sort of thing.

2          THE COURT:  Well, I think if there is a concern

3   about that, because certainly there are going to be skips in

4   the interview with the FBI more than in this chat.

5          But I can certainly instruct the jury that not all

6   portions of this interview are relevant and the court has

7   instructed counsel to omit some portions that are not

8   relevant for the jury to hear.  So I think that should cure

9   it.

10         MS. GOSWANI:  Okay.  So in this one we'll just

11  take the text out and we'll leave it that way and then you

12  can explain that to the jury.

13         Is that correct?

14         THE COURT:  Yes.  I think it's a little

15  problematic here because you've got a question "Really, was

16  she my age" and then no answer; and an obvious deletion, I

17  think, is going to cause more mischief than if we left it

18  in.

19         If we take out the question, "Really, was she my

20  age," then I have no problem with leaving in the names; but

21  otherwise, I mean, it just -- it sort of jumps up and

22  screams at the jury.

23         MS. GOSWANI:  Okay.  So would you like me just to

24  wipe them out then and we'll just have a blank there?

25         THE COURT:  All three lines.  The question, the

1    answer, and her misspelled response.

2          MS. GOSWANI:  I'm sorry.  There are two lines,

3    Your Honor.  There's the line that the Government deleted

4    and then there is "cool."

5          THE COURT:  Right.  And the line above it also has

6    to go out then.  If we are going to show -- let the jury see

7    that the answer has been deleted, we need to take out the

8    question.  Otherwise, it just accomplishes nothing.

9          MS. HETTLE:  Your Honor, now I am confused.  The

10   court is going to leave in the line "Was she my age"?

11         THE COURT:  No.

12         MS. HETTLE:  No.

13         THE COURT:  So it would read, "Have you met

14   anyone?

15         "Sure.  Last night.

16         "What did you do?"

17         Just take out those three lines so we don't have a

18   question with no answer.

19         MS. GOSWANI:  Well, Your Honor, for the record, I

20   mean, the Government would object to taking it out.  I would

21   prefer to just take out what the blank line that is in there

22   and "cool."

23         THE COURT:  I understand.

24         MS. GOSWANI:  So what the court would like is take

25   out all three lines?

*Pat Cuneo, Official Reporter*

14

1          THE COURT:  Yes.

2          MS. GOSWANI:  But leave in the speakers?

3          THE COURT:  That's fine.  Leaving the speakers in

4  is fine.

5          Okay.  We have then --

6          MS. HETTLE:  Your Honor, I just think that it is

7  just best if we have nothing there.  We're not going to be

8  arguing that there was a break or a log off or anything

9  there.

10         THE COURT:  I understand.  But the jury could be

11 concerned and I am going to alleviate the concern with an

12 instruction; and I think that will take care of it; and the

13 fact that something is omitted I don't think will be

14 prejudicial to anybody.

15         I received two documents just a few minutes ago,

16 both of them dealing with the proposed testimony of

17 Dr. Kiesler.  The -- let me just give you my reaction to

18 both of these and then I'll hear from you.

19         The defense is concerned that in the FBI interview

20 of the defendant there is -- there are statements by the FBI

21 agent that smack of expert testimony.  One talking about

22 here is a pattern, although I have taken out the words

23 "here's a pattern."

24         But later the agent talks about, "You know, we've

25 seen this kind of thing before and we understand what this

15

 1    means; and our profiles would say that this is very

 2    dangerous having this kind of conversation so quickly with a

 3    stranger over the Internet."

 4         The defense is asking the court either to delete

 5    the statements about patterns and profiles or to allow

 6    Dr. Kiesler to testify concerning her opinion as to -- well,

 7    I think the defense just says her opinion concerning

 8    patterns of behavior.

 9         I haven't seen Dr. Kiesler's report.  What I have

10    seen is the Government's response to the report which does

11    discuss at length a number of the opinions that the doctor

12    is apparently prepared to offer.

13         It's --

14         MS. HETTLE:  I'm sorry.  Would Your Honor like a

15    copy of that report?  I do have it.

16         THE COURT:  I don't know how long it is or --

17         MS. HETTLE:  I think the -- it is 16 pages.  I

18    apologize, Your Honor.  I thought it was faxed over to your

19    chambers.

20         THE COURT:  No.

21         Well, I would like to see a copy of the report.

22    I'm not going to stop right now and read it I guess is what

23    I mean.  I will tell that you that reading the Government's

24    response, I am very concerned that this does not appear to

25    be a proper subject of expert opinion.

16

1          I thought that before the report was made

2    available just based on the offers that were made last week

3    when counsel was here.

4          My tentative at that time was to allow her to

5    educate the jury about chatrooms and communication between

6    people on the Internet in case there were jurors who didn't

7    understand how that works.

8          But from what I have read, at least in the

9    Government's response, it appears that there are a number of

10   opinions formed with no basis for them that either have no

11   foundation and she is not qualified to offer or that go

12   directly to the issue of the defendant's state of mind which

13   is improper for expert opinion.

14         So what I might end up having to do is just hear

15   and record your arguments about this this afternoon and then

16   I'll read the report and then I'll issue a written order

17   after I have had a chance to read it.

18         But I am inclined to preclude the testimony either

19   entirely or at least anything other than just an

20   educational --

21         MS. HETTLE:  But, Your Honor, I feel my arguments

22   are based on the report; and I apologize for this not

23   getting to you which is my responsibility.

24         What I might suggest is that if we just submit it

25   to the court and just take this up at another time because I

17

1   think if the court has read the report and knows and has

2   some reference as to what I'm arguing about it, it might

3   have more weight that way.

4           THE COURT:  Okay.

5           MR. HSU:  I guess my only concern just so the

6   court knows is that we have already contacted a rebuttal

7   expert; and, you know, not knowing whether or not

8   Dr. Kiesler is going to testify is making it sort of

9   complicated for that expert.

10          So I don't know when the court is inclined to hear

11  this again but --

12          THE COURT:  What does Thursday look like?

13          THE CLERK:  We can do it in the morning.

14          MS. HETTLE:  We are free, Your Honor.

15          THE COURT:  Let me just look at that date.

16              (Pause in the proceedings.)

17          THE COURT:  Okay.  That should be fine.  Why don't

18  we set it for 9 o'clock.

19          THE CLERK:  Thursday morning.

20          MR. HSU:  Thank you, Your Honor.

21          MS. HETTLE:  Thank you, Your Honor.

22          THE COURT:  Oh, let me tell what you my concern

23  is.  I'm going to be off tomorrow.  My husband has been to

24  the hospital and I'm taking him home and setting him up for

25  home care.

1          I hope everything goes smoothly and I am able to

2    come to work on time Thursday morning.  But maybe we should

3    make it 10 o'clock so that if for some reason people don't

4    show up and I get stranded, we'll be able to reach you at

5    your offices and let you know.

6          So let's make it 10:00.  Everything should be

7    fine, but I don't want to have you show up without a judge.

8          MS. HETTLE:  Your Honor, there is the other option

9    of, you know, we just talked about putting this over just

10   for a couple of weeks so there is no urgency with this.  I

11   wouldn't want to make the court come on a day it wasn't

12   intending to be in.

13         THE COURT:  Well, I was -- I am planning to be

14   here Thursday.  Tomorrow I am not.  If all goes well, I

15   should be here.  But I know we are kind of getting down to

16   the wire with a lot of issues hanging fire close to the end.

17         What is the Government's preference?  Would you

18   rather leave it on for next Tuesday and hope we can get

19   everything done?

20         MR. HSU:  I think the only concern at this time,

21   Your Honor, is that my cocounsel has a trial scheduled for

22   August 17; and so if we pushed it a little bit, it is going

23   to become a problem for her.

24         THE COURT:  Okay.  And I think -- let me see.

25         MS. HETTLE:  Your Honor, we have checked with our

1  expert and she is available for the month, I believe, in

2  September; and I think that we are available early

3  September?  September 7 or --

4       MR. HSU:  Actually, now, unfortunately, that week

5  doesn't work for me.  That particular week doesn't work for

6  me.

7       THE COURT:  Okay.  I'm just wondering if we just

8  went a week to August 3rd.  I don't know what my schedule

9  is, but let me ask you yours first.  Would that give us a

10 little more flexibility or is that not helpful?

11      MS. HETTLE:  I believe our expert is not available

12 that week.

13      THE COURT:  Okay.

14      Well, shall we just leave it where it is then?

15 And if we run into a bind where I am simply not able to get

16 all these pretrial issues done for you, we can talk about

17 moving it.  But let's just leave it on for next Tuesday and

18 we'll try to get everything squared away before then.

19      MR. HSU:  Thank you, Your Honor.

20      THE COURT:  Okay?

21      All right.  And you've given me the report, have

22 you?

23      MS. HETTLE:  I will do it right now.

24      THE COURT:  Okay.  Good.

25      MS. GOSWANI:  Your Honor, before we conclude, I

1    don't know if now is a good time.  Maybe Thursday would be

2    better.  I have a couple of little housekeeping issues just

3    to go through as we're trying to get our exhibits and things

4    in order.

5              THE COURT:  Sure.

6              MS. GOSWANI:  I know each court has its own way of

7    handling the presentation of evidence so I just wanted to --

8    what we will do with this audio file, technically at this

9    point, we will go through and we'll redact everything the

10   court wants redacted; and then we were intending to play

11   that for the jury and also provide them with a transcript in

12   accordance with the Ninth Circuit Jury Instruction 2.7.

13             We will provide that for the court.  And then

14   we'll also try to draft some kind of instruction so that if

15   there are big gaps, the jury will have some sense of what is

16   going on there.

17             THE COURT:  Good.

18             MS. GOSWANI:  Similarly would be -- I'm sorry.

19             THE COURT:  I said that's good.

20             MS. GOSWANI:  And then with the Instant Message

21   dialogue, we were planning to basically publish it to the

22   jury in the same way.  We were thinking of having sort of

23   corralling two paralegals, two people not involved with

24   actually doing the investigation, read the dialogue back and

25   forth into evidence for the jury and then, again, provide

1    the jury with a binder with the transcript so they can

2    follow it along, just do it the same way.

3              THE COURT:  Fine.

4              MS. GOSWANI:  And then as to -- we, in light of

5    the *Blakely* decision, we have submitted a special verdict

6    form to defense counsel; and, basically, what it will, you

7    know, it's not actually that complicated luckily in this

8    case.

9              It would ask the jury to find that defendant used

10   a computer and the Internet and also that he intended to

11   entice a minor between the ages of 12 and 15 which we

12   believe would take care of *Blakely* issues.

13             And then, finally, as to opening statements, I am

14   hoping to talk about the instant messaging, obviously a

15   dialogue between the defendant and the 13-year-old; and I

16   may, after providing them to defense counsel, use a few

17   direct quotes in slide format; and I know some judges simply

18   don't like to see any exhibits.

19             THE COURT:  I have no problem with that so long as

20   the other side has seen them.

21             MS. GOSWANI:  Thank you, Your Honor.

22             MS. HETTLE:  Your Honor, just on that, we would

23   object to the instant messages being read by the paralegals.

24   I think that that allows the interjection of inflection of

25   voice that could change the meaning of the text, and I would

22

1    propose that that evidence be brought in a different way

2    without reading it in.

3            THE COURT:  Okay.  I don't think the procedure

4    itself is objectionable.  Obviously, if there were some

5    dramatics or anything that seemed to change or add, you

6    know, a human element to what is obviously a written

7    message, I wouldn't allow it.

8            MS. GOSWANI:  Actually, Your Honor, one of the

9    reasons we were trying to corral -- we also have summer

10   interns and in hopes of not having the dramatization you

11   would get by having the investigating agent.

12           THE COURT:  Should be fine.

13           MS. GOSWANI:  That was our hope.

14           THE COURT:  Okay.

15           MS. HETTLE:  I am just --

16           MS. GOSWANI:  Thank you, Your Honor.

17           MS. HETTLE:  I'm sorry.  I was just thinking about

18   summer interns.

19                         (Laughter.)

20           MS. HETTLE:  We haven't looked at the special

21   verdict form so, obviously, if we bring that up, take that

22   up on Thursday.

23           THE COURT:  Certainly.

24           MS. HETTLE:  I just would like to point out to the

25   court there is a double last page on Dr. Kiesler's report.

1    I wanted to get a page from her and I could not open the

2    file out of her MacIntosh file so she had to send it

3    WordPerfect so the pagination is not in order.

4             THE COURT:  Okay.

5             MS. HETTLE:  And, Your Honor, we have not

6    received -- I don't know who the rebuttal witness is but we

7    haven't -- if it's not Doug Hunt -- is it Doug Hunt that we

8    have received a resume from?

9             MR. HSU:  Well, Your Honor, it's a rebuttal

10   witness based on what they told us Dr. Kiesler was going to

11   say yesterday.  So I don't have anything to disclose yet.

12            MS. HETTLE:  Well, if there is an expert, Your

13   Honor, I think we're entitled to that.

14            THE COURT:  If you make a determination that you

15   are going to call an expert once I make a ruling on this,

16   then the expert should be disclosed.

17            MR. HSU:  I think that I will have something on

18   Thursday, Your Honor, when the court rules.

19            THE COURT:  Okay.

20            MS. GOSWANI:  Your Honor, one more point of

21   clarification as to the redactions.

22            THE COURT:  Uh-huh.

23            MS. GOSWANI:  For instance, on page 36, I'm

24   assuming that the court put in "You might look" and that I

25   should then redact that entire dialogue after that.

24

1       Is that correct?

2       THE COURT:  Hold on just one second.  Let me find

3  my notes so I know where we are.

4            (*Pause in the proceedings.*)

5       THE COURT:  Right.  I just put ellipses in because

6  I didn't want to do all that typing.

7       MS. GOSWANI:  Okay.

8       THE COURT:  But everything from 36, every line

9  down to the end of "greatest shape in the world but I'm."

10       MS. GOSWANI:  Okay.

11       THE COURT:  And then you have already redacted

12  quite a bit beneath that as well.

13       MS. GOSWANI:  Thank you, Your Honor.

14       MR. HSU:  Thank you, Your Honor.

15       THE COURT:  All right.  See you on Thursday.

16       THE CLERK:  Court stands adjourned.

17            (*Pause in the proceedings.*)

18       THE COURT:  There was one remaining issue which I

19  forgot.  There was a request when we were last on the record

20  to modify Mr. Nisely's bond by eliminating the electronic

21  monitoring.

22       I have a supplemental report from Pretrial

23  Services indicating that he does appear to have been

24  compliant with the conditions of his bond.

25       They suggest or recommend home detention be

1   continued but replace it -- I'm sorry -- electronic

2   monitoring be continued but replace home detention with a

3   curfew which would give the defendant more flexibility.

4           The Government has no opposition to that.

5           Does the defense want to be heard on that

6   recommendation?

7           MS. TORRES-GUILLEN:  Yes, Your Honor.  We would

8   ask the court to actually remove the electronic monitoring.

9           What is clear from the report is that for the last

10  year and a half he has been in compliance; and, I believe,

11  he might have been in custody for a couple of months; and it

12  might have been for a full year and a half.

13          But it's clear he has followed all the rules; and

14  we would ask that the court remove the electronic

15  monitoring.

16          We recognize that the probation officer is making

17  a conclusion about why it shouldn't be removed; just that he

18  is going to trial shortly.  But that doesn't really address

19  the true issue which is:  Is he in compliance?  Has he been

20  showing up to court?  Has he been following the rules?  And

21  can he be expected to do the same?

22          And with such an extensive history, it's clear

23  that he can and would.

24          THE COURT:  Is the continued use of electronic

25  monitoring if the defendant just has a curfew but is free to

1   go wherever he wishes to go, how is this restrictive on him

2   on any way that impairs his ability to prepare for trial? I

3   mean, we are so close to trial now.

4          MS. TORRES-GUILLEN:  Your Honor, the most

5   important thing really is for him to be psychologically and

6   emotionally prepared as possible for trial; and there is a

7   psychological impact of having the bracelet on him.

8          And given that he's not a flight risk and given

9   that he has been showing up as he supposed, we don't believe

10  it is necessary to have that additional aspect of concern or

11  worry tied to Mr. Nisely.

12         THE COURT:  I guess the problem is always that he

13  certainly has been compliant and has made all of his court

14  appearances and done everything he is supposed to do; but

15  then he has electronic monitoring that sort of makes sure

16  that he does all of that.

17         With the trial date so close, I think it would be

18  a mistake to remove electronic monitoring now.  But I will

19  modify the bond to remove the home detention restrictions

20  and to provide simply that defendant return to his home no

21  later than 10:00 p.m.; and, otherwise, the defendant is free

22  to go wherever he needs to go between now and the time of

23  trial.

24         Okay?  That will be the order.

25         MS. HETTLE:  Thank you, Your Honor.

27

1          MS. TORRES-GUILLEN:   Thank you, Your Honor.

2          MR. HSU:   Thank you, Your Honor.

3          *(At 2:44 p.m., proceedings were adjourned.)*

4

5                              -oOo-

6

7                           CERTIFICATE

8

9          I hereby certify that pursuant to Section 753,

10   Title 28, United States Code, the foregoing is a true and

11   correct transcript of the stenographically reported

12   proceedings held in the above-entitled matter.

13

14   Date:   July 22, 2004

15

16

17          *Pat Cuneo*

     PAT CUNEO, U.S. COURT REPORTER
18   CSR NO. 1600

19

20

21

22

23

24

25

*Pat Cuneo, Official Reporter*

1

1   UNITED STATES DISTRICT COURT

2   CENTRAL DISTRICT OF CALIFORNIA

3   WESTERN DIVISION

4   THE HON. FLORENCE-MARIE COOPER, JUDGE PRESIDING

5

6   UNITED STATES OF AMERICA,                )
                                             )
7                          Plaintiff,        )
                                             )
8              vs.                           ) NO. CR 02-1195 FMC
                                             )
9   BARRY FRANCIS NISELY,                    )
                                             )
10                                           )
                           Defendant.        )
11   _____     )

12

13

14   REPORTER'S TRANSCRIPT OF PROCEEDINGS

15   Los Angeles, California

16

17   Thursday, July 22, 2004

18

19

20

21

22                          PAT CUNEO, CSR 1600
                            Official Reporter
23                          Roybal Federal Building
                            255 East Temple Street
24   ORIGINAL                Room 181-E
                            Los Angeles, CA  90012
25                          (213) 626-0197

EXHIBIT



2

1   APPEARANCES:

2   FOR THE PLAINTIFF:     DEBRA W. YANG
                           UNITED STATES ATTORNEY
3                          BY:  WESLEY HSU
                           and  RUPA GOSWANI
4                          ASSISTANT UNITED STATES ATTORNEYS
                           United States Courthouse
5                          312 N. Spring Street
                           Los Angeles, California 90012
6                          (213) 894-3045 & 894-5486

7   FOR THE DEFENDANT:     MARIA E. STRATTON
                           FEDERAL PUBLIC DEFENDER
8                          By:  NADINE HETTLE, DEPUTY
                           and  SYLVIA TORRES-GUILLEN, DEPUTY
9                          321 East Second Street
                           Los Angeles, California 90012
10                         (213)894-4790 & 894-

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1    LOS ANGELES, CALIF.;   THURSDAY, JULY 22, 2004; 10:09 A.M.

 2                              -oOo-

 3              THE COURT:  Good morning.

 4                   (All counsel responded.)

 5              THE CLERK:  Calling Criminal Case 02-1195 FMC,

 6    United States of America vs. Barry Francis Nisely.

 7              Please state your appearances.

 8              MR. HSU:  Good morning, Your Honor.

 9              Rupa Goswani and Wes Hsu on behalf of the United

10    States.

11              MS. HETTLE:  Good morning, Your Honor.

12    Nadine Hettle and Sylvia Torres-Guillen on behalf of

13    Barry Nisely who is present.

14              THE COURT:  Good morning.

15              THE DEFENDANT:  Good morning.

16              THE COURT:  All right.

17              The matter is on calendar this morning concerning

18    the admissibility of the testimony of Dr. Sara Kiesler.  I

19    have read all the documents now provided by the parties.  I

20    now have the report of the doctor.

21              I'm sort of pretty much back where I was at the

22    very beginning when I knew very little about this.  Up until

23    about paragraph 18 of the doctor's report on page 11, the

24    testimony is background information, educational

25    information, things that may or may not be needed by or
```

4

1   helpful to a jury but are certainly inoffensive and

2   innocuous and might be of value and so the court certainly

3   has no objection to testimony on that subject.

4          There is a segment that deals with the

5   psychological effect of anonymity.  This appears to the

6   court to be barely relevant because, unlike many of the

7   people that she discusses in her report, the defendant, in

8   fact, identified himself using his first initial and last

9   name and then in another part of the communication used his

10  first name.

11         So the desire for anonymity does not seem to be as

12  relevant in this case as it does in others where people take

13  on a completely fictional identity; but there is still an

14  atmosphere on the Internet of people not knowing where you

15  are, how to find you, what part of the universe you are

16  writing from; and so I suppose that the psychological effect

17  of anonymity could be relevant.

18         But when the doctor moves from general concepts of

19  Internet communication to testimony concerning -- I don't

20  think, no, she uses the word "child molesters" -- but people

21  who sexually assault minors, the court has great concern

22  about that and it does not appear to be relevant on any

23  basis.

24         First, there is -- and she then segues from that

25  into her analysis of the defendant's actions and what seems

1    likely or unlikely with respect to this defendant.

2            Again, there is no indication that she has met the

3    defendant, interviewed him, even reviewed the documents that

4    are relevant in this file so there is no foundation for an

5    opinion about what the defendant intended or thought.

6            Even if there were a foundation, it violates the

7    Federal Rules of Evidence for her to testify as to what the

8    defendant intended or thought.

9            And statements about sexual assaults of minors,

10   first of all, I think the math is fatally flawed.

11           She takes some percentages of who assaults minors

12   and ends up with a one percent likelihood that the defendant

13   would have engaged in that kind of conduct over the

14   Internet.  That simply doesn't hold together at all.

15           We're also not dealing here with a person who is

16   charged with sexually assaulting a minor or intending to

17   sexually assault a minor.

18           The charge in this case has to do with someone who

19   attempted to set up an engage in consensual sex with

20   somebody who is -- appeared to be at least a young person;

21   and so statistics about sexual assaults on minors seem to be

22   so far removed from this case.

23           But in any event, there just is not a foundation

24   for this witness to be testifying concerning what people do

25   or do not do or intend when they engage in sexual

6

1    conversation with people on the Internet who appear to be

2    young.

3            So I would allow her to testify as to background,

4    no testimony about child sex offenders, and no testimony

5    about this defendant; and whether that's of value to the

6    defense will be a decision for the defense to make when you

7    have analyzed the report.

8            Do we have any other issues on calendar this

9    morning?  I really don't need to hear more argument about

10   this.  We have discussed it *ad nauseam* and I have read lots

11   of documents about it.

12           MR. HSU:  Thank you, Your Honor.

13           No particular issue.  I just note for the record

14   that we did file yesterday the proposed redactions following

15   the court's order from the last time we were here.  I am

16   sure the court hasn't had a chance to review that yet.

17           THE COURT:  I have not.  But I assume if there is

18   anything in the redactions that's inconsistent with the

19   court's order, I will hear about it from the defense; but I

20   haven't gone through it line by line.

21           MR. HSU:  Thank you, Your Honor.

22           And we also intend to file, probably on Monday but

23   hopefully tomorrow, a copy of that but the copy of the one

24   we'll give to the jury.

25           THE COURT:  Okay.

*Pat Cuneo, Official Reporter*

7

1           MR. HSU:  In other words, the one that we have

2    already filed with the court still has the strikeouts in it

3    to show the court what is missing.

4           THE COURT:  Okay.  But you'll remove those?

5           MR. HSU:  Yes.

6           THE COURT:  Okay.

7           MS. HETTLE:  Your Honor, may I?

8           There is another issue raised -- a couple of

9    issues, actually.  Your Honor, again, it's about the

10   statement -- statements made by Agent Doug Hunt in the

11   course of the confession.

12          Even the Government in their papers, when

13   addressing the issue of Dr. Kiesler, said that she states

14   the behavior of Mr. Nisely did not fit the profile of the

15   sexual predators that's detailed in the literature.

16          And then they go on to say how it's inappropriate

17   for her to argue that because it's an ultimate issue.  That

18   is exactly what Doug Hunt is doing.

19          THE COURT:  Well, I struck it from the interview,

20   did I not?  I'm sure I did.

21          MS. HETTLE:  I thought that issue was still --

22          THE COURT:  Not in my mind.

23          MS. HETTLE:  Your Honor, you struck pattern.  I

24   don't know -- the word "pattern" from one of Agent Hunt's

25   statements to Mr. Nisely that this fits a pattern; but there

8

1    are others that we have detailed in our papers that I wasn't

2    sure whether the court had ruled on; and those are the ones

3    that I have listed in my supplemental filing.

4              THE COURT:  Well, I thought that I took out an

5    entire section where he described profile and this is what

6    we are looking for and this is what we think it means.  If I

7    am wrong, correct me, but I thought I did.

8              MR. HSU:  The section where he talks about

9    pattern, the court did strike.  The Government did, in

10   response to this filing, strike another sentence from the

11   statement where Agent Hunt says, "Our profilers would say

12   that's very dangerous."

13             That is on -- well, it's on page 4 of the

14   defendant's filing.

15             THE COURT:  But we don't know what page it is?

16             MR. HSU:  Page 57 of the Government's papers.

17                  (Pause in the proceedings.)

18             THE COURT:  Okay.

19             "Our profilers will say that's very dangerous" has

20   been struck on page 57.  I thought there was another

21   section.  I may have to go back and get my file.

22             Okay.  What also has been struck from page 55 is,

23   "You know, here's a pattern and, you know, here is someone

24   that is looking for acceptance and children are more

25   accepting."  That's out.

9

1          (*Pause in the proceedings.*)

2          THE COURT:  Do you know specifically -- is there

3   another page reference?

4          MS. HETTLE:  Your Honor, I think -- I think it was

5   right towards the end of the statement where we had most of

6   the problems; and I think the court has covered it.

7          THE COURT:  Okay.

8          MS. HETTLE:  But we'll take one more look at it;

9   and if there is anything, we can bring it to the court's

10  attention today.

11         THE COURT:  Good.

12         MS. HETTLE:  Your Honor, the second issue is their

13  use of a rebuttal expert.  I disagree with their

14  interpretation of Rule 16.  Experts are treated differently

15  than other types of rebuttal evidence that is going to be

16  introduced at trial.

17         We requested reciprocal discovery on any experts.

18  They have given us nothing on who they intend to use.  We

19  have no way of researching this person's background, finding

20  our own information out about them, and now we're a few days

21  before trial; and I think that that should be excluded, Your

22  Honor.

23         MR. HSU:  Two things, Your Honor.

24         First, apparently we do have a disagreement

25  because I think Rule 16 says the Government's case-in-chief;

1    but, secondly, based on the court's ruling today, the

2    rebuttal witness I contacted, his testimony won't be

3    necessary.

4              THE COURT:  Okay.  That takes care of that.

5              MR. HSU:  Your Honor, I just wanted to implore

6    defense counsel to give us any proposed redaction sooner

7    rather than later because it does take time technically for

8    us to take the redaction out of the audio file.

9              THE COURT:  All right.

10             MS. HETTLE:  Your Honor, I understand that.  The

11   Government has been referring to I have not been good about

12   getting back to them in the last few days about jury

13   instructions.

14             We are completely -- I don't know how to describe

15   it -- snowed under in our office; and I am trying my best to

16   get to things; but we have all these illegal reentry cases

17   that have just got dumped on us and ten days to reply or to

18   get back and have defendant sign this.

19             I'm still running around all day trying to get an

20   interpreter so I am trying my best, Your Honor.

21             I understand that the Government is a little

22   frustrated but we'll try.

23             THE COURT:  Okay.  Maybe -- I would give this

24   issue priority certainly over jury instructions.  If they

25   get to me, you know, a day or two late, life will go on.

11

1        But maybe before you leave here this morning, if

2   you could just -- in fact, I just got my file and I had

3   everything highlighted and color coded so maybe I can look

4   and see if there is anything else that I thought I had

5   covered on that issue.

6        Let me just make sure there is nothing left open.

7   So give me just a minute and I'll take care of it.

8                    (*Pause in the proceedings.*)

9        THE COURT:  Not to mention the amount of time you

10  are spending on *Blakely*, right?  Don't even go there.

11       MS. HETTLE:  Everything has been held up because

12  of that.

13       THE COURT:  I know.  I'm dreading when the dam

14  breaks.

15       MS. HETTLE:  I think it's breaking now.

16                    (*Laughter.*)

17       THE COURT:  My law clerk told me this morning that

18  they have asked the U.S. Supreme Court to give immediate

19  attention.  There is a case apparently that is ready to go,

20  and they have agreed to take it, but it looks like September

21  before they tell us what they really meant.  So . . . .

22       MS. TORRES-GUILLEN:  Your Honor, in fact, I echo

23  Miss Hettle's concerns; and we are certainly concerned about

24  being able to effectively represent Mr. Nisely; and our

25  request would be for a continuance as opposed to trying to

12

1    get everything done at the last minute.

2            So if the court could entertain that request.

3            THE COURT:  Give me just one second and then we'll

4    talk about it.

5                    (*Pause in the proceedings.*)

6            THE COURT:  Okay.  I think we have taken care of

7    all of the concerns about the quasi-expert testimony that

8    was being offered through this interview so I don't see

9    anything else here that I was concerned about that hasn't

10   been redacted so I'm fine with that.

11           MR. HSU:  Thank you, Your Honor.

12           THE COURT:  Okay.  Am I hearing a formal request

13   for continuance because counsel is not prepared?

14           MS. TORRES-GUILLEN:  Yes, Your Honor.

15           THE COURT:  Does the Government want to be heard

16   on that?

17           MR. HSU:  Well, Your Honor, the Government objects

18   at this point.  I mean, we have -- this case has been

19   pending since October of 2002 when the defendant was

20   arrested; and we would just suggest that we need to go

21   forward now.

22           I don't know between all of our schedules when the

23   next time we'll be able to pick a trial date is.

24           THE COURT:  Well, we've done a great deal of work

25   in preparation and I would certainly like it to go forward;

1   but, you know, I'm never going to force a defense lawyer to

2   go to trial if a lawyer tells me he's not prepared.

3          My sense of what we have gone through in the last

4   couple of weeks is that you are very prepared indeed better

5   than many defense lawyers that I see; but I am looking at it

6   from the outside.

7          And so if you tell me that you're not, I will not

8   force you to go to trial because I think that just violates

9   the defendant's right to prepared and competent counsel.

10          MS. TORRES-GUILLEN:  Your Honor, we do appreciate

11   that and we are not prepared.

12          THE COURT:  Then I will have to put it over.  By

13   then I may have forgotten everything we have done so far and

14   we'll all have to start again.  The real downside of the

15   continuance is that it duplicates a lot of effort.

16          Why don't I leave it to you to talk to Miss Mamer

17   and work out a date.  I'm happy to come back out and take a

18   time waiver from the defendant once you have done that; but

19   it's silly to take time on the record to try and work out

20   our schedules.

21          MS. TORRES-GUILLEN:  Thank you, Your Honor.

22                     (Recess.)

23          THE COURT:  All right.  We have a new date?

24          THE CLERK:  Yes, Your Honor.  August 31.

25          THE COURT:  Okay.  Mr. Nisely, you have a right

14

1    under the Constitution to a speedy trial and, in your case

2    that means a trial next Tuesday.  Do you understand your

3    right to a speedy trial?

4            THE DEFENDANT:  Yes, I do.

5            THE COURT:  Okay.  Your attorneys have requested a

6    continuance of this matter to August 31 which would mean we

7    would be going beyond your speedy trial date and extending

8    the trial to August 31.

9            Do you waive your right to a speedy trial and

10   agree to an August 31 trial date?

11           THE DEFENDANT:  Yes.

12           THE COURT:  Counsel join?

13           MS. TORRES-GUILLEN:  Yes, we do.

14           MS. HETTLE:  Yes, Your Honor.

15           THE COURT:  All right.  Thank you.

16           MS. HETTLE:  I would just note we are still

17   attempting to get a hold of our expert about that date.  We

18   will let the court know if there is any change.

19           THE COURT:  Okay.

20           MR. HSU:  Thank you, Your Honor.

21           Would the court like us to prepare a speedy trial

22   order?

23           THE COURT:  I don't think we need one under the

24   circumstances.

25           MR. HSU:  All right.

15

1          Thank you, Your Honor.

2          MS. GOSWANI:   Thank you, Your Honor.

3      *(At 10:31 a.m., proceedings were adjourned.)*

4

5                         -oOo-

6

7                      CERTIFICATE

8

9          I hereby certify that pursuant to Section 753,

10   Title 28, United States Code, the foregoing is a true and

11   correct transcript of the stenographically reported

12   proceedings held in the above-entitled matter.

13

14   Date:   July 26, 2004

15

16

17

18   PAT CUNEO, U.S. COURT REPORTER
     CSR NO. 1600

19

20

21

22

23

24

25

## CERTIFICATE OF SERVICE

I, JOAN MOON, declare:

That I am a citizen of the United States and resident or employed in Los Angeles

County, California; that my business address is the Office of United States Attorney,

United States Courthouse, 312 North Spring Street, Los Angeles, California 90012;

that I am over the age of eighteen years, and am not a party to the above-entitled

action; That I am employed by the United States Attorney for the Central District of

California who is a member of the Bar of the United States District Court for the

Central District of California, at whose direction I served a copy of:

**[PROPOSED] ORDER RE: EXPERT TESTIMONY AND RECORDED STATEMENT**

service was:

[X ] Placed in a closed
envelope, for collection
and interoffice delivery
addressed as follows:

[ ] Placed in a sealed
envelope for collection and
mailing via U.S. Mail,
addressed as follows:

[ ] By hand delivery
addressed as follows:

[ ] By facsimile as follows:

[ ] By messenger as follows:

[ ] By federal express as
            follows:

**NADINE HETTLE, ESQ.**
**Deputy Federal Public Defender**
**321 East 2nd Street**
**Los Angeles, California 90012**

This Certificate is executed on July 29, 2004, at Los Angeles, California.

I certify under penalty of perjury that the foregoing is true and correct.

JOAN MOON